**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| RAIN DROP PRODUCTS, INC., | CIVIL ACTION NO. |
| Plaintiff, | |
| | JUDGE: |
| vs. | |
| | **COMPLAINT** |
| PPG INDUSTRIES, INC. and | |
| AUTOBODY PRODUCTS INC, | **JURY TRIAL DEMANDED** |
| Defendants. | |

**COMPLAINT**

Plaintiff, Rain Drop Products, Inc., by and through their attorneys, Obermayer Rebmann Maxwell & Hippel LLP, files this Complaint and states as follows:

1.      Rain Drop Products, Inc. ("Rain Drop") is a manufacturer of splash pads, a type of playground and park equipment which allows children to play in custom-designed water features.

2.      Rain Drop began to use PPG Delfleet coatings on its custom splash pad and swimming pool equipment in or around February, 2019 based on the representations of both Defendants that the Delfleet product was suitable to use for splash pads, and promises to provide warranty protections in the event of product failure.

1

3.       These promises were made by both PPG Industries, Inc. ("PPG"), the manufacturer, and Autobody Products, Inc. ("API"), the wholesaler.

4.       In 2021, Rain Drop began to receive reports of coatings failures at installations where the Delfleet coatings were used. These reports have continued since that time, and as of the time of filing encompass 51 claims in 15 states.

5.       While it has not yet been possible to check every installation at which Delfleet coatings were used, it appears likely that the failures have been universal and that the Delfleet coatings have failed in all cases.

6.       Rain Drop has been working diligently to make repairs to the installations where Defendants' coatings have failed at the application Defendants sold and warranted them for, but PPG and API have refused to make good on their promises by remediating or covering the costs of remediating the failures of their products.

7.       As a result, Rain Drop has been forced to bring this action.

**JURISDICTION AND VENUE**

8.       Rain Drop is an corporation organized under the laws of the State of Ohio with its primary place of business in Ashland, Ohio.

9.       PPG is a corporation organized under the laws of the Commonwealth of Pennsylvania with its primary place of business in Pittsburgh, Pennsylvania.

10.       API is a corporation organized under the laws of the Commonwealth of Pennsylvania with its primary place of business in Butler, Pennsylvania.

11.       This Court has subject matter jurisdiction over this controversy pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship and the amount in controversy is in excess of $75,000.

12.     This Court has specific personal jurisdiction over the Defendants pursuant to  23 O.R.C. 2307.383 and constitutional due process because they have transacted significant business in Ohio; contracted to supply goods in Ohio; caused tortious injury by an act or omission in Ohio; regularly done business in Ohio and derived substantial revenue from that business; and those actions and/or omissions gave rise to the causes of action stated herein.

13.      Venue is proper pursuant to 28 U.S.C. § 1390 because a substantial part of the events and/or omissions giving rise to the claims herein occurred in the Northern District of Ohio.

**PARTIES**

14.     Rain Drop is an Ohio Corporation with its principal place of business at 2121 Cottage Street, Ashland, Ohio.

15.     Rain Drop's principal business is the manufacture and installation of splash pads, and it conducts that business in all 50 U.S. states and 23 foreign countries.

16.     PPG is a Pennsylvania Corporation with its principal place of business at One PPG Place, Pittsburgh, Pennsylvania.

17.     PPG is a large industrial corporation engaged in, *inter alia*, the manufacture and sale of coatings for a variety of purposes, including the Delfleet line of coatings.

18.     API is a Pennsylvania Corporation with its principal place of business at 133 South Monroe Street, Butler, Pennsylvania.

19.     API's principal business is the resale of coatings, including the Delfleet line of coatings.

**FACTS**

20. Founded in 1982, Rain Drop has grown to become one of the premiere manufacturers of splash pads globally.

21. Rain Drop specializes in colorful and whimsical custom splash pad installations around the world.

22. As a result of this specialization, coatings for Rain Drop installations must offer vivid colors in flexible shades that will stand up to the specific needs of a splash pad, including exposure to water, both from the Splash Pads themselves and the elements; exposure to ultraviolet radiation; and regular contact with children as they play on the splash pads.

23. In 2019, Rain Drop was seeking a new coating solution for a variety of reasons.

24. PPG and API approach Rain Drop with a series of promises that the Delfleet coatings line would suit Rain Drop's essential purposes, including in a presentation attached at Exhibit A.

25. Among other representations, PPG and API represented that Delfleet offered a "5-year written warranty on single stage Delfleet FDHX chemical resistant single stage (gloss, color retention, adhesion)," and a "7-year written warranty on FBCH basecoat clearcoat utilizing F3921 high solids polyurethane clear or F3911 chemical resistant polyurethane clear (gloss, color retention, adhesion)." Exhibit A.

26. PPG and API reiterated the warranty and its term repeatedly. Exhibit A.

27. PPG and API also promised "ongoing support by PPG and API personal [sic]" and "global support through PPG's global network."

28. In reliance on these promises and warranties, and other representations by PPG and API, Rain Drop began to use Delfleet coatings for its splash pads.

4

29.     As a part of the switch to the Delfleet coatings, Rain Drop instituted a number of quality control measures to ensure that the coatings were applied to Rain Drop products correctly.

30.     First, Rain Drop sent its two painters to a training program operated by PPG to train in using the Delfleet coatings.

31.     At no time did PPG or API require, recommend, or suggest that any additional training was necessary in order to apply the Delfleet coatings.

32.     Second, Rain Drop installed a PPG computer which was used to ensure that the coatings were mixed properly in order to apply the coatings according to PPG standards.

33.     At all times Rain Drop applied the coatings using the PPG computer and the PPG training to ensure that the coatings were applied as directed by PPG.

34.     Rain Drop continued to work with API and PPG and neither ever indicated that Rain Drop was not applying the coatings properly or not applying the coatings as recommended.

35.     On or around May 1, 2023, Rain Drop received what would prove to be the first of dozens of reports of fading and delamination of the Delfleet coatings on one of its splash pads, at the Wapakoneta YMCA in Wapakoneta, Ohio.

36.     At Wapakoneta, the coatings were delaminating and fading in multiple locations.



Delamination and peeling of paint from a fixture from Wapakoneta



Delamination and Peeling of paint from a fixture at Wapakoneta

37. At some areas the result of the delamination was rusting and other deterioration of the material beneath the coatings.



Rusting and deterioration where the Delfleet Paint has delaminated and peeled away at Wapakoneta

38. Rain Drop contacted API and PPG regarding this issue, and attempted for months to convince PPG to remediate its product's failure.

39. PPG conducted laboratory testing of Delfleet coatings and eventually provided some of the result of that testing to Raindrop. Those results are attached hereto as Exhibit D.

40. PPG's testing showed that the Delfleet coatings failed when applied according to PPG's standards.

41. Indeed, PPG also tested applications outside PPG's standard mix ratios, and the coatings applied according to PPG's standards underperformed the "improperly" applied test coatings.

42. Eventually PPG did provide some funds to defray the cost of remediation of the damage caused by the failure of the Delfleet coatings at Wapakoneta.

43. In the meantime, however, further reports of similar failures of PPG's coatings on Rain Drop's splash pads began to pour in.

44. As of the filing of this Complaint, over 50 additional locations have been identified where the Delfleet paint has failed. A few examples:



Paint pigment rubbing away after the coating delaminated at a splash pad in Arizona



Delaminating and peeling paint at a swimming pool in Texas



Progression of deterioration of a feature at a splash pad in Ohio



Delamination and peeling of Delfleet paint at a splash pad in Iowa



Delamination and peeling of Delfleet paint at a swimming pool in Illinois



Delamination and peeling of Delfleet paint at a splash pad in California



Delamination and peeling of Delfleet paint at a splash pad in Massachusetts



Delamination and peeling of Delfleet paint at a swimming pool in West Virginia



Delamination and peeling of Delfleet paint at a splash pad in South Carolina



Deterioration and damage to a feature from a swimming pool in Maryland due to failure of Delfleet paint



Delamination and peeling of Delfleet paint leading to damage from a splash pad in Alabama

45.     It is now clear that the Delfleet paint system can be expected to delaminate and fail in every usage from the time Rain Drop began using it to the date Rain Drop abandoned it. This adds up to nearly 4500 individual sites.

13



Sites where PPG Delfleet Paint was used on Rain Drop Splashpads in North America

46.     After it became clear that PPG's Delfleet paint is a universal failure for the purposes PPG provided it to Rain Drop, Rain Drop switched to another paint system from a different manufacturer.

47.     Rain Drop never encountered any similar issue with the paint it used prior to Delfleet, nor with the paint it has used since abandoning Delfleet.

48.     As soon as Rain Drop stopped buying defective PPG paints, PPG ceased to engage with Rain Drop on efforts to remediate the damage caused by the defective paint.

49.     In essence, PPG told Rain Drop that it would not take action to correct its own errors unless Rain Drop kept buying its paint, and the warranty it had offered would simply be ignored. PPG offered no justification for this act of attempted extortion.

50.     PPG subsequently discontinued the Delfleet paint system.

51.     On information and belief, the Delfleet system was discontinued because PPG was aware that it was unstable, and would delaminate, peel, cause transference of pigment, and lead to damage to the materials it was sold to cover and protect.

52.     PPG's own testing, which it provided to Rain Drop, showed that Delfleet was prone to failure – indeed, it was essentially guaranteed to fail.

53.     Nonetheless, PPG has refused to take any responsibility for these failures and left Rain Drop to attempt to remediate the damage caused by PPG's defective paint alone.

54.     As a result, Rain Drop suffered harm of multiple types.

55.     First, Rain Drop was forced to make repairs to the faulty Delfleet coatings at the many, many sites where it failed and the number of locations where Rain Drop must make those repairs continues to grow month by month as new harm is identified,

56.     Second, Rain Drop was forced to make repairs to elements damaged at many sites as a secondary result of the failure of the Delfleet coatings.

57.     Third, Rain Drop incurred costs in changing to an alternate paint system when it was forced to abandon PPG's defective Delfleet system.

58.     Fourth, Rain Drop suffered lost profits and harm to reputation not only as a direct result of the failure of Delfleet coatings but also because of the opportunity costs caused by Rain Drop's need to move significant resources from sales and installation to remediation.

## CLAIMS FOR RELIEF

### COUNT I – Breach of Contract

59.     Plaintiff incorporates by reference the foregoing paragraphs as if set forth fully herein.

60.     PPG and API offered to provide a paint system to Rain Drop which would be suitable for use on Rain Drop's splash pads and swimming pool fixtures.

61.     Rain Drop provided consideration in return for that promise, and indeed paid over $1,310,000 to API and, through API, PPG over the course of five years.

62.     PPG and API did not provide a paint system suitable for use on Rain Drop's splash pads and swimming pool fixtures.

63.     To the contrary, PPG and API instead provided a substandard and defective product which failed in its essential and only purpose.

64.     As a result, Rain Drop suffered damages, including direct and consequential damages.

**COUNT II – Breach of Warranty**

65.     Plaintiff incorporates by reference the foregoing paragraphs as if set forth fully herein.

66.      PPG provided a 5-7-year warranty on its Delfleet system, which both PPG and API communicated to Rain Drop repeatedly in order to induce Rain Drop to purchase the Delfleet system for use on its splash pads and swimming pool fixtures.

67.     Rain Drop relied upon this warranty in purchasing the Delfleet system, and communicated to its customers that Rain Drop products used coatings with a warranty against failure for 5-7 years.

68.     Delfleet products did not, however, perform as PPG and API warranted. To the contrary, they failed near universally and much more quickly than the 5-7 years warranted.

69.     PPG and API were given notice of the defect as soon as Rain Drop became aware of it.

70.     Despite the notice, PPG and API refused to make good on their warranties. Instead, they blamed Rain Drop until their own testing proved that Rain Drop was not at fault, and then simply refused to take any action on their warranty unless Rain Drop continued to buy PPG's products.

71.     Rain Drop suffered harm as the result of the failure of the Delfleet paint system to perform as warranted, as well as from PPG and API's refusals to make good on their warranties by correcting the failures of the warranted product.

**COUNT III – Warranty of Fitness for Particular Purpose – O.R.C. § 1302.28**

72.     Plaintiff incorporates by reference the foregoing paragraphs as if set forth fully herein.

73.     At the time PPG, API and Rain Drop agreed that PPG and API would sell Rain Drop the Delfleet system and Rain Drop would buy it, PPG and API were wholly aware of the particular purpose Rain Drop intended.

74.     Indeed, Rain Drop had specifically approached API and PPG, explaining its intention to use the coatings for splash pads and swimming pools, and API and PPG had recommended the Delfleet system for the purpose.

75.     PPG and API were therefore aware that Rain Drop was relying on their particular skill and judgment as, respectively, a manufacturer and a wholesaler of paints and other coatings. Rain Drop in fact did rely on the skill and judgment of PPG and API, and suffered harm as a result of that reliance.

17

## \COUNT VI – Product Liability - O.R.C. § 2307.71 *et seq.*

76.     Plaintiff incorporates by reference the foregoing paragraphs as if set forth fully herein.

77.     The Delfleet paint system, as sold to Rain Drop, was defective in its manufacture or construction, because it materially deviated from the design specifications, formula, or performance standards of the manufacturer.

78.     Specifically, the design specifications, formula, or performance standards should have produced a coating that would not fail when exposed to ultraviolet radiation, water, or other ordinary environmental factors.

79.     Alternatively, the Delfleet paint system was defective in design or formulation and the risks of the design, which were near certain failure of the product, exceeded the benefits of the design, which because of the near certain failure of the product were negligible.

80.     Alternatively, the Delfleet paint system did not conform to the representations of its manufacturer, in that PPG represented that it would not fail under ordinary splash pad or swimming pool conditions, but it did fail under those conditions, near-universally.

81.     The Delfleet paint system also did not conform to the representations of API, its supplier when it left API's control, in that API represented that it was suited to the uses identified by Rain Drop, but in fact it failed near-universally when used in conformity to those identified uses.

82.     As a result of PPG and API's actions, Rain Drop suffered both economic loss and harm as defined in O.R.C. § 2307.71.

**COUNT VI – Fraudulent Misrepresentation**

83. Plaintiff incorporates by reference the foregoing paragraphs as if set forth fully herein.

84. PPG and API made representations that the Delfleet system would not fail in the presence of ultraviolet radiation, water, or other environmental factors present at a splash pad or swimming pool, making it appropriate for Rain Drop's uses.

85. These representations were material to Rain Drop's purchase of the Delfleet paint system and use of Delfleet paint. Indeed, Rain Drop would not have used Delfleet paint if not for these representations.

86. These representations were false, and information and belief PPG and API knew they were false at the time the representations were made, or made the representations with such utter disregard for whether they were true or false that the knowledge of falsity can be inferred.

87. PPG and API made the representations with the intention of misleading Rain Drop into relying on those representations and Rain Drop if fact justifiably relied on those representations.

88. Rain Drop was harmed as a result of its reliance on PPG and API's false representations regarding the Delfleet paint system.

**COUNT VII – Negligent Misrepresentation**

89. Plaintiff incorporates by reference the foregoing paragraphs as if set forth fully herein.

19

90.     In the course of their business, API and PPG provide information in which they have a pecuniary interest. Specifically, they provide information about the capabilities of PPG coatings, including the Delfleet system.

91.     With regard to Rain Drop, API and PPG provided false information about the capabilities of the Delfleet system, stating that it was suitable for Rain Drop's uses and would not fail if applied to those uses.

92.     Rain Drop was harmed by its justifiable reliance on API and PPG's false representations.

93.     The representations were made with, at minimum, failure to exercise reasonable care or competence in obtaining or communicating information about the capabilities of the Delfleet system.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the following relief:

  a.  Compensatory damages, including direct incidental, and consequential damages in excess of $75,000;

  b.  Statutory damages;

  c.  Punitive damages;

  d.  Reasonable attorney fees and costs;

  e.  Pre- and post-judgment interest; and

  f.  Any and all other relief that the Court deems just and proper.

Respectfully submitted:

Dated:  May 26, 2026

*/s/Andrew J. Horowitz, Esquire*
Andrew J. Horowitz, Esquire
OH ID 101753
*andrew.horowitz@obermayer.com*
Bruce C. Fox
PA ID 42576
*bruce.fox@obermayer.com*
D. McArdle Booker, Esquire
PA ID 320890 *(pro hac vice)*
*mcardle.booker@obermayer.com*
OBERMAYER REBMANN
MAXWELL & HIPPEL LLP
525 William Penn Place, Ste. 1710
Pittsburgh, PA 15219
412-566-1500
412-281-1530 (f)

*Attorneys for Plaintiff*

21

## <u>VERIFICATION</u>

I, Mark Williams, hereby certify subject to the penalties of perjury that the averments of facts contained in the within Complaint are true and correct to the best of my knowledge, information, and belief.

Dated: May 26th, 2026

_____
Mark Williams, President – CEO
Rain Drop Products, LLC

22